IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:22-cv-02322-SKC-TPO

TERRY SORENSEN,

    Plaintiff,

v.

JERRY ROARK, *et al.*,

    Defendants.

---

**ORDER RE: MOTION FOR SUMMARY JUDGMENT (DKT. 42)**

---

This case arises from two separate assaults on Plaintiff Terry Sorenson while he was in the custody of the Colorado Department of Corrections (CDOC) and housed at Bent County Correctional Facility (BCCF) and Arkansas Valley Correctional Facility (AVCF). Dkt. 18. Plaintiff contends Defendants Jerry Roark, Donny Britton, Donald Trujillo (BCCF Defendants), Maureen Sheridan, Shane Corey, and Omar Mendoza (CDOC Defendants), failed to protect him from harm in violation of the Eighth Amendment.[1] *Id*. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this matter arises under the United States Constitution.

---

[1] The Court notes Plaintiff never filed a return or waiver of service for Defendant Robert Shepard. Mr. Shepard has neither appeared nor participated in this action.

1

Defendants have filed two Motions for Summary Judgment which are fully briefed. Dkts. 44 (BCCF Defendants), 47 (CDOC Defendants).[2] The Court has carefully considered the Motions and related briefing, the exhibit attachments, the entire case file, and the applicable law and legal authorities. No hearing is necessary. Because, when considering the undisputed material facts, no reasonable jury could conclude Defendants violated Plaintiff's Eighth Amendment rights, their Motions are GRANTED.

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to assess whether a trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the "responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, then the nonmoving party must identify material facts showing there is a genuine dispute for trial. *Id.* at 324. A fact is "material" if it has the potential to affect the outcome of a dispute under applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). An issue is "genuine" if a rational

---

[2] The BCCF Defendants and Defendant Sheridan are only implicated in Claim One and Defendants Corey and Mendoza are only implicated in Claim Two. Because the Court's reasoning is applicable to all Defendants, it addresses the Motions together.

2

trier of fact could find for the nonmoving party on the evidence presented. *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). In performing this analysis, the factual record and any reasonable inferences from it are construed in the light most favorable to the nonmoving party. *Id.*

Even when a party fails to appropriately respond to the request for summary judgment and its purportedly undisputed facts, the Court is nevertheless obligated to ensure the movant has satisfied the standard under Rule 56. As the Tenth Circuit explained in *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1255 (10th Cir. 2017), "in granting summary judgment based upon a failure to respond, a district court must still determine that summary judgment is appropriate." *See also* Fed. R. Civ. P. 56(e)(3) advisory committee's notes to 2010 amendment.

## UNDISPUTED MATERIAL FACTS

Under Fed. R. Civ. P. 56(c), when parties assert that a fact is genuinely disputed, they must support the assertion with citations to specific parts of the record. When they fail to, the Court may consider the fact undisputed for purposes of deciding the motion.[3] Fed. R. Civ. P. 56(e)(2). Based on the Court's assessment of the Parties'

---

[3] In his attempt to create disputed issues of material fact, Plaintiff frequently responds to Defendants' proffered facts with tangential matters and evidence. For example, CDOC states that when Defendant Mendoza arrived at Plaintiff's cell, he observed Plaintiff speaking with Ramos. Plaintiff contends this is disputed but supports it with the unrelated evidence that he earlier tried to get Mendoza's attention to a conflict between Plaintiff, Ramos, and Hollowman. Dkt. 61, ¶64. This does nothing to contradict CDOC's fact. Where Plaintiff has challenged Defendants'

3

Statements of Undisputed Material Facts and Response/Additional Facts (Dkts. 57, 61), the Court finds the following material facts to be undisputed:

Plaintiff was transferred from Buena Vista Correctional Facility to BCCF in January 2020. *See* BCCF Statement of Undisputed Facts (hereinafter "BCSUF"), Dkt. 57, ¶2. On March 22, 2020, BCCF officials searched Plaintiff's cell and seized several items of contraband including homemade alcohol and tattooing equipment. *Id*. at ¶¶4, 5. According to the allegations in the Amended Complaint, Plaintiff informed prison officials that his cell mate, David Graham, was being extorted by members of the Bloods gang to make alcohol. Dkt. 18, ¶23.[4] Plaintiff further alleges that after he reported this to prison officials, members of the Bloods physically assaulted him. *Id*. at ¶29.

Plaintiff was sent to the infirmary at Colorado Territorial Correctional Facility for treatment of his injuries. *See* CDOC Statement of Undisputed Facts (hereinafter "COSUF"), ¶11. When he returned to BCCF, Plaintiff was placed in a different pod where there were fewer known members of the Bloods. *Id*. at ¶¶30-31.

In September 2020, another BCCF inmate, Matthew Graves, assaulted Plaintiff ("Graves assault"). Dkt. 18, ¶43. According to Plaintiff, following the assault,

---

facts with reference to unrelated or inconsequential evidence, the Court finds Defendants' facts to be undisputed.

[4] The Court sparingly incorporates allegations from the Amended Complaint to provide context for the undisputed facts. Those will be clearly designated, and the Court's use of those allegations is not a finding that they are undisputed.

he saw Graves visit a cell affiliated with members of the Bloods. COSUF, ¶41. Prior to this incident, however, Mr. Graves and Plaintiff never had a conflict, and Mr. Graves was not known to be violent toward other inmates. *Id.* at ¶¶32-33. Nor had Graves been identified as having any suspected or confirmed involvement with the Bloods or other security threat groups. *Id.* at ¶38.

Defendant Corey, a criminal investigator with the Office of the Inspector General, was assigned as the lead investigator into the Graves assault. *Id.* at ¶39. Although Plaintiff told Defendant Corey his belief that the Bloods encouraged Graves to assault him, Corey never found anything to verify this suspicion. *Id.*

Thereafter, Plaintiff was transferred to AVCF and placed in a protective custody pod. *Id.* at ¶¶42-45. While there, Plaintiff again spoke to Defendant Corey, this time about people in protective custody being "bullies" and trying to bring drugs into the facility. *See* Plaintiff's Deposition Testimony, Dkt. 47-1, pp.276-77. Plaintiff also told Corey he needed to move pods but admits he cannot remember why he wanted to be moved. *Id.* at p.278. And Defendant Corey testified he could not recall ever talking to Plaintiff about ongoing issues with members of the Bloods or the 211 gang. COSUF, ¶51.

In September 2021, Plaintiff was assaulted again, this time by Tommy Hollowman ("Hollowman assault"). *Id.* at ¶56. On the date of the assault, Plaintiff was in a cell with Deja Woolbright, Hollowman, and Yogi Ramos, when Hollowman told Ramos to show his genitals to Plaintiff. *Id.*; *see also* Dkt. 47-1, p.282. Plaintiff

5

objected to the behavior and left Woolbright's cell. COSUF, ¶57. Hollowman, who was drunk at the time, was upset at Plaintiff's rejection of their conduct and also believed Plaintiff insulted him. *Id.* at ¶58. Hollowman "chest bumped" Plaintiff but did not follow him back to his cell. *Id.* at ¶59.

Ramos, however, did follow Plaintiff back to his cell and once there, began to assault him. *Id.* at ¶¶60-61. When Plaintiff began to scream, Defendant Mendoza, a sergeant at AVCF, and another officer were tasked with investigating the situation. *Id.* at ¶63. When the officers arrived, they saw Plaintiff talking with Ramos. *Id.* at ¶64. Mendoza checked both men for injuries and finding none, sent Ramos back to his cell. *Id.* at ¶¶65, 67.

After Mendoza left, Plaintiff went to another inmate's cell. *Id.* at ¶71. Hollowman later entered the cell and without any warning, punched Plaintiff in the jaw. *Id.* at ¶72. Prior to this incident, Plaintiff had not identified Hollowman as a custody issue (*Id.* at ¶55), and it was Plaintiff's belief that Hollowman hit him because Plaintiff fought with Ramos. *Id.* at ¶73.

This case followed. Dkt. 1. Plaintiff's Eighth Amendment claims are based on his contention that Defendants failed to protect him from Matthew Graves in September 2020 and Tommy Hollowman in September 2021. Dkt. 18.

## ANALYSIS AND FINDINGS

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement,

6

including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citation omitted). Prison officials violate the Eighth Amendment "only if the deprivation to which the prisoner has been subjected is 'objectively sufficiently serious' and only if the prison official has a 'sufficiently culpable state of mind.'" *Grissom v. Roberts*, 902 F.3d 1162, 1174 (10th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The duties under the Eighth Amendment include a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. "[T]o establish a cognizable Eighth Amendment claim for failure to protect, a plaintiff 'must show that he is incarcerated under conditions posing a substantial risk of serious harm,' the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Benefield v. McDowall*, 241 F.3d 1267 (10th Cir. 2001) (quoting *Farmer*, 511 U.S. at 834)). However, "[b]eing subjected to the mere possibility of assault from another inmate does not satisfy the objective component of an Eighth Amendment violation." *Williams v. Daniels*, No. 14-cv-00705-CBS, 2014 WL 5152359, at *3 (D. Colo. Oct. 14, 2014).

In his Responses (Dkts. 53, 55), Plaintiff spends considerable time citing evidence and making arguments that he faced a serious threat of violence from members of the Bloods and 211. And he contends all Defendants were aware of these threats of physical harm. But even accepting as true that Defendants knew Plaintiff

7

faced a threat of harm from these gangs, it alone does not establish the objective prong of the Eighth Amendment analysis. Because Plaintiff seeks to hold Defendants liable for the Graves and Hollowman assaults, the central question is whether Defendants disregarded a substantial risk of serious harm to Plaintiff posed by Mr. Graves or Mr. Hollowman. The answer is no.

### A.   Claim One: Graves Assault

With respect to the Graves assault, Plaintiff has failed to satisfy the objective prong of a failure to protect claim because there was no warning that Mr. Graves posed any threat to Plaintiff. Indeed, Mr. Graves' actions were unexpected even by Plaintiff.

Plaintiff admits that prior to the assault he was not afraid nor had any safety concerns regarding Mr. Graves, and Plaintiff never identified Mr. Graves as a potential custody issue. BCSUF, ¶33-35. To be sure, Plaintiff acknowledges he and Mr. Graves had a problem-free and even amiable relationship. COSUF, ¶33. It is also undisputed that as of the date of the assault, Mr. Graves had never been identified as being affiliated with any security threat groups, including the Bloods. *Id*. at ¶38. Despite Plaintiff's suspicions after the fact that the Bloods had encouraged Mr. Graves to assault Plaintiff, he has not presented any competent evidence to support this. And Defendant Corey was never able to verify Plaintiff's suspicions. *Id*. at ¶39. Indeed, according to Mr. Graves, he assaulted Plaintiff because of a change in Mr. Graves' medications and because he was using illicit drugs at the time. *Id*. at ¶¶36-

8

37. In fact, prior to the assault, Plaintiff observed Mr. Graves to be under the influence and acting outside of his usual behaviors. *Id*. at ¶35.

That Mr. Graves may have visited a cell associated with the Bloods *after* the assault is of no moment. To protect Plaintiff, Defendants must be aware of the threat prior to the assault. *See, e.g.*, *Grimsley v. MacKay*, 93 F.3d 676, 681 (10th Cir. 1996) (observing that inmate may demonstrate the existence of a substantial risk of serious harm "where prison officials disregard repeated warnings of danger to a particular prisoner and continually refuse to make the situation safer"). To conclude otherwise would require Defendants to protect Plaintiff from a theoretical threat of harm, which is not required by the Eighth Amendment. *Williams*, 2014 WL 5152359, at *3; *see also Harris v. Matthews*, 417 F. App'x 758, 762 (10th Cir. 2011) ("[A]n idle threat of impending physical harm that is not carried out will not suffice to state an Eighth Amendment claim.").

Because there is no evidence from which a jury could conclude Mr. Graves posed a substantial risk of harm to Plaintiff, Defendants are entitled to summary judgment on this claim.

### B.   Claim Two: Hollowman Assault

Regarding the Hollowman assault, Plaintiff again relies heavily on evidence that he faced a general threat from members of 211 as well as evidence that those members of 211 were at AVCF. Dkt. 55, p.6. Plaintiff also asserts that members of 211 were in his pod. *Id*. The missing connection, however, is any evidence that the

9

members of 211 who posed a threat to Plaintiff were the same members in his protective custody pod. And more to the point, there is no evidence that Mr. Hollowman was one of those threatening members.[5] Similar to Mr. Graves and the Bloods, a generalized threat to Plaintiff from 211 is insufficient to demonstrate Mr. Hollowman specifically posed a substantial risk of serious harm to Plaintiff.

As was the case with Mr. Graves, prior to the assault, Plaintiff had not identified Mr. Hollowman as a custody issue. COSUF, ¶55. Indeed, because Plaintiff and Hollowman lived in the same protective custody pod at AVCF, they had been pre-screened to ensure there were no custody issues with the other offenders in the pod. *Id.* at ¶10. Further, on the day of the assault, it is undisputed that Plaintiff was voluntarily spending time in Deja Woolbright's cell with Hollowman and Ramos, and that Hollowman assaulted Plaintiff without any warning. *Id.* at ¶¶56-57, 72; *see also* Dkt. 47-1, p. 282. And perhaps most importantly, Plaintiff believed Hollowman assaulted him because Plaintiff fought with Ramos earlier that day. COSUF, ¶73. Thus, there is no evidence that Hollowman's presence in Plaintiff's pod posed a substantial risk of serious harm to Plaintiff.

Turning to Plaintiff's claim against Defendant Mendoza, even if the Court accepts *arguendo* that—based on his earlier confrontation with Plaintiff—Hollowman posed a serious threat on the day of the assault, there is nevertheless no evidence to

---

[5] To be sure, Plaintiff's willingness to spend time in proximity with Mr. Hollowman would suggest the opposite.

10

satisfy the subjective prong of the inquiry. Defendant Mendoza testified in his deposition that he never observed a confrontation between Plaintiff and Mr. Hollowman (Dkt. 47-4, p.23), and Plaintiff fails to establish a genuine issue of material fact concerning Mendoza's knowledge or notice. Although Plaintiff testified that—after Mr. Hollowman "chest bumped" him—he started yelling to alert Mendoza to the dispute, this alone is insufficient evidentiary support to establish Mendoza heard him or was aware of any conflict between Hollowman and Plaintiff. And when Mendoza was later tasked with investigating the dispute between Plaintiff and Ramos (COSUF, ¶¶63-64), it is undisputed that neither man told Mendoza that Ramos assaulted Plaintiff, nor did they mention anything about Hollowman. *Id.* at ¶66. Thus, there is no question of material fact as to whether Mendoza was deliberately indifferent to any risk of harm from Hollowman.

Defendants are entitled to judgment in their favor on this claim.

\*   \*   \*

Based on the undisputed material facts, no reasonable jury could conclude that the Graves or Hollowman assaults were related to the purported threats Plaintiff faced from the Bloods or 211 gangs. Without evidence of a substantial risk of harm posed by Mr. Graves or Mr. Hollowman to Plaintiff, or evidence of any notice that Plaintiff was in danger from either or both men, Defendants cannot have been deliberately indifferent to his safety as a matter of law. *Lane v. Klingler*, No. 01–6144, 25 F. App'x. 781, 783 (10th Cir. Dec. 12, 2001) (affirming dismissal of failure to protect

11

claim where inmate did not allege he knew his assailant before the attack, he had previously been threatened by him, or that the defendant prison officials knew there was a substantial risk of serious harm to the inmate).

Consequently, and for the reasons shared above, IT IS ORDERED:

1. Defendants' Motions for Summary Judgment (Dkts. 44, 47) are GRANTED and the claims against them are dismissed;

2. Plaintiff's claims against Defendant Robert Shepard are DISMISSED pursuant to Fed. R. Civ. P. 4(m) for failure to serve; and

3. The Clerk of Court shall enter judgment in favor of Defendants, who are entitled to an award of their costs.

DATED: November 21, 2025

BY THE COURT:

S. Kato Crews
United States District Judge